Charles CAUSEY and Burl E. Causey,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 21765.

United States Court of Appeals
Fifth Circuit.

Nov. 1, 1965.

Vaughn Terrell, Rome, Ga., for appellants.

F. D. Hand, Jr., Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., for appellee.

Before TUTTLE, Chief Judge, and BELL and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge:

The indictment in this case was composed of ten counts. The first count charged conspiracy to violate Sections 500 and 641 of Title 18, United States

Code. The second count charged the receipt, concealment and retention of certain United States postal money orders with the intent to convert the same to the use of the Appellants in violation of Section 641 of Title 18, United States Code. The last eight counts charged forgery of postal money orders in violation of Section 500, Title 18 United States Code.

At the conclusion of the evidence for the Government, the defense moved for a judgment of acquittal on all counts, which was denied. The defense offered no testimony and a jury verdict of guilty on all ten counts promptly followed.

■ The evidence amply supports the jury verdict as to Charles Causey and as to him the judgment must be affirmed.

■ As to counts numbered two through ten, charging substantive offenses, the evidence is wholly insufficient to sustain the conviction of Burl E. Causey. The motion for a judgment of acquittal on these counts should have been sustained.

The conviction of Burl Causey on the conspiracy count requires more elaborate discussion.

It is not disputed that on the night of October 23, 1963, the fourth class Post Office at Clay, Alabama, was burglarized and 1737 blank money order forms were stolen. It is not disputed that on the night of December 2, 1963, the Post Office at Wheeler, Alabama, was burglarized and both the "round dating money order stamp" and the written "limitation stamps" were taken.

The money order forms thus stolen speedily showed up in the possession of Charles Causey and Jim Gallister, the latter being named in this indictment as a co-conspirator but not as a co-defendant.

In the main, the government attempted to build its case by the testimony of one Thania Bell Norman, also known as Joanne Norman. She was likewise named, but not indicted, as a co-conspirator. She testified that Charlie Causey "came up to the house one night and told me that I was going with him to his house. So we went over there, and Jim Gallister and Dick Dane were over there. We sat around that night and Dick Dane and Jim Gallister went off and got drunk and come back and Jim Gallister and Charlie and Dick Dane had a few words. * * * Then about two weeks later I filled out some money orders". These money orders were filled out in Charlie Causey's house. Then this testimony followed:

"Q. Were the defendants present at this time?

A. Well, Charlie was, but Dink (Burl), he was there off and on.

Q. How did you get the money orders?

A. I got them from Charlie Causey.

Q. All right. When you filled out these money orders, I again ask you, he was present, you stated, Charlie Causey was present?

A. Yes, sir.

Q. And you stated also that on and off the defendant, Burl Causey, was present?

A. He came in and out."

On cross examination, Miss Norman further testified:

"Q. Miss Norman, so far as you know, you never saw Burl Causey with any of these money orders, nor did he ever say anything about it or have anything to do with it, did he?

A. As far as I know he didn't.

Q. You never had any knowledge of his having anything to do with it, did you?

A. No, sir."

She was further asked:

"Q. You had no knowledge of any agreement between Burl Causey and anybody with reference to them (the money orders) did you?

A. No, sir.

Q. And you certainly had no agreements with Mr. Burl Causey

to do anything with any money orders at all, did you?

A. No, sir."

The Court then asked the witness the further questions:

"Q. Who told you to make them out?

A. Charlie Causey.

Q. Now, at the time Mr. Causey, and I believe these others—were also there at the house? You never mentioned Mr. Burl Causey; he was never there?

A. He came in and out.

Q. He never had anything to do with the money orders?

A. So far as I know he didn't."

By the Prosecutor:

"Q. He never directed you to do anything with the money orders; is that correct?

A. Yes, sir."

There was no other proof from any other witness to connect Burl Causey with the money orders in question.

The proof further shows that soon after the money orders were filled out, the Defendant, Burl Causey, went with Charlie Causey, Jim Gallister, and Thania Bell Norman on an automobile trip from Rome, Georgia, to Hot Springs, Little Rock, and Memphis, in that order, returning to Rome. The witness, upon questioning, refused to testify that Burl Causey knew that any money orders were being cashed and further stated that to the best of her memory Burl Causey was not present when she wrote the money orders in question.

On the automobile trip in question, the parties stayed one night in Hot Springs, about two days at Little Rock, remained overnight in Memphis, and returned to Rome. The witness did not see any of the money orders during the trip.

She had filled out thirty or forty of them for $100 each before the trip began, which she gave back to Charles Causey. Jim Gallister show: her how to fill

them out. The money orders were stamped "Wheeler, Alabama, December 2, 1963". When Thania Bell saw the limitation and postal mark stamps, Jim Gallister had them in his possession. She did not know how the trip to Arkansas was financed, and did not know who paid the motel bills.

The girl said there were no incidents in Hot Springs, but speaking of an incident in Little Rock she testified as follows:

"Well, Charlie Causey and Burl Causey and I were at the motel and Jim Gallister came in and he told Charlie and Burl, he said, 'I just about got busted'."

She was asked what he meant by that, to which objection was sustained, when she stated further, "he just said that, and Burl Causey and Charlie said they thought we had better leave, and so we left".

The registration clerk at the motel in Hot Springs identified the motel registration card, but did not know who registered. She identified Charlie Causey in the courtroom but said that he was not the one who registered.

The desk clerk at the motel in North Little Rock pointed out one of the defendants as having signed the register at his motel, but the record is silent as to which of the two defendants he actually identified.

The registration card at the motel in Memphis was not admitted in evidence.

A handwriting expert in the employ of the Post Office Department from Cincinnati testified that from an examination of limited handwriting specimens he would reach the "probable opinion" that Burl Causey signed the motel registration cards in Hot Springs and North Little Rock. When questioned further he said, "It is a little bit short of a definite opinion. The available evidence in this case indicates it is highly probable * * *. It is a little bit less than a definite opinion".

The expert later said, after extensive interrogation, that he was "satisfied"

that Burl Causey signed the registration cards at Hot Springs and Little Rock. He was absolutely positive and definite that James R. Gallister had endorsed all the money orders which were cashed on the Hot Springs expedition. No witness testified to the contrary. He was positive and definite that Thania Bell Norman had filled in the money orders. Witnesses who appeared and testified to the endorsement and cashing of the money orders declined to identify either Charles Causey or Burl Causey as participating in that activity, but did identify the picture of James R. Gallister, and Gallister was always alone when passing the forged instruments.

On one occasion, Gallister failed in his efforts to cash a money order at a shop in Hot Springs. There is no evidence of any like failure in Little Rock unless it is to be assumed and presumed that his report of "nearly getting busted" had reference to such an episode. There is no proof for that inference other than the suspicion that might naturally be aroused by the other circumstances in the case.

Other than above related, there was no other testimony of any knowledge or participation by Burl Causey except for a purported letter which we feel was inadmissible. One James Rollin Smith, a three time federal convict, testified that he wrote that letter for and at the request of one Tommy Baker, although he was the individual who gave it to postal authorities while he was in jail in New Orleans. In any event, this record is totally devoid of any proof to show any connection, criminal or otherwise, between James Rollin Smith, Tommy Baker, and Burl Causey, except that Jim Gallister had been in New Orleans and might have had an opportunity to have had some kind of arrangement with either or both of them, but no such arrangement was shown by the evidence. Tommy Baker was present in the courthouse when this case was tried, but for some reason not revealed by the record, he gave no testimony.

It is our duty on appeal to weigh all the evidence in that light most favorable to the verdict of the jury, and this we shall do. But the question remains, was the proof sufficient to support the verdict of the jury in finding Burl Causey guilty of the alleged conspiracy? A finding of sufficiency must stand or fall on what Burl Causey did while the money orders were being forged in Georgia and what he did on the Hot Springs tour. The record is silent as to whether Burl Causey lived in the same house with Charlie. The dwelling is consistently referred to in the testimony as Charlie's house. We infer from the general appearance of the record that Thania Bell Norman may have been a reluctant witness, but the Government made no showing to that effect. Indeed, at one point when the Government asked leave of the Court to lead the witness, without giving a reason for it, the Court declined to permit it. On the other hand, the witness tendered by the Government, for whose credibility the Government vouched by putting her on the stand, steadfastly refused to incriminate Burl Causey in what went on in Georgia. To the contrary, she said several times that to the best of her knowledge Burl Causey was not present when the money orders were filled out, did not know what was going on in that regard, and had no agreement about it.

As to the Hot Springs trip, the best proof that Burl Causey signed fictitious names to motel registers is the testimony of the handwriting expert that the writing on the registration cards, in his opinion, *was probably* that of Burl Causey. He said at least twice that he could not give a definite opinion on it, and said once that he was satisfied, as a matter of opinion, that it was Burl Causey's handwriting. Even if it were his handwriting, the proof clearly indicates that James R. Gallister alone endorsed and cashed all the money orders on this trip. There is no proof that Burl Causey received any of the proceeds unless one simply assumes to infer it from his mere presence on the journey.

The Government's witness would not undertake to state how the trip was financed. She saw none of the money orders on the trip and knew nothing about how it was financed.

So, we are reduced to a situation in which we can only say with certainty that Burl Causey was "in and out" of his brother's house during the time of the money order transaction, but the Government's witness actually exculpates him of any guilty knowledge or participation at that period of the conspiracy. There was no proof of guilty knowledge on his part during the Hot Springs expedition unless "probable" fictitious motel registrations and the unexplained "busting episode" in Little Rock fill all the big gaps in this proof and establishes beyond a reasonable doubt that Burl Causey is guilty of each and every essential ingredient of the alleged crime.

Many of the guiding principles of the law of conspiracy are too well established to require elaboration here. We enumerate a few which are of particular applicability to a case of the kind now to be decided. To establish the intent essential to a conviction for conspiracy the evidence of knowledge must be clear and not equivocal. A suspicion, however strong, is not proof and will not serve in lieu of proof. Charges of conspiracy are not to be made out by piling inference upon inference. Guilt of conspiracy may not be inferred from mere association. It is true that the proof may be circumstantial or direct or both, but it must convince beyond a reasonable doubt that a conspiracy existed, that the defendant knew it, and with that knowledge intentionally did some act or thing to further or carry on that conspiracy.

The evidence before us is not of a conflicting nature. The Defendant offered no proof. We indulge that view of the evidence most favorable to the government. The Prosecution certainly proved that by association with the known guilty parties Burl Causey had an opportunity to become a conspirator. It did not prove that the crime followed

the opportunity. We are thus compelled to hold that the judgment of acquittal as to the conspiracy count against Burl Causey should also have been granted.

As to Charles Causey the judgment is in all respects

Affirmed.

As to Burl Causey the judgment on all counts is

Reversed.