UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerald Leon PRUETT,
Defendant-Appellant.

No. 76–2825.

United States Court of Appeals,
Fifth Circuit.

May 13, 1977.

Peter F. K. Baraban, No. Miami, Fla., George D. Gold, Miami, Fla., for defendant-appellant.

John W. Stokes, U.S. Atty., Jerome J. Froelich, Jr., Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before COLEMAN, MORGAN and HILL, Circuit Judges.

COLEMAN, Circuit Judge.

Appellant and his wife were indicted on October 7, 1975, on six counts:

Count I: Conspiracy to import cocaine in violation of 21 U.S.C., § 963;

Count II: Importation of cocaine in violation of 21 U.S.C., § 952(a);

Count III: Possession with intent to distribute cocaine in violation of 21 U.S.C., § 841(a)(1);

Count IV: Possession of methaqualone in violation of 21 U.S.C., § 844(a);

Count V: Possession of marijuana (by Mrs. Pruett alone) in violation of 21 U.S.C., § 844(a);

Count VI: Possession with intent to distribute marijuana in violation of 21 U.S.C., § 841(a)(1).

Prior to trial the government withdrew Count IV. Count V was dismissed during the trial when the Court suppressed the marijuana evidence involved in that Count.

Two additional motions to suppress were filed by the appellant prior to trial, the first was directed to the Count VI marijuana which was found in two suitcases in an automobile seized at the house and the second aimed at evidence obtained by wiretap. These motions were denied by the magistrate, whose decision was affirmed by the District Judge.

At the close of the government's case in chief and again at the close of all the evidence the appellant unsuccessfully moved for judgments of acquittal as to all pending counts. The jury acquitted Mrs. Pruett of all charges and convicted the husband on Counts I, II, III, and VI. Motions for judgment notwithstanding the verdict and for a new trial were denied, hence this appeal.

We find the evidence insufficient to sustain the convictions on Counts I, II, and III. We further hold that the evidence found in the seized automobile should have been suppressed. The result is that the convictions on all Counts are reversed.

I

*Facts*

Viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the material facts were as follows:

On May 16, 1975, a small parcel arrived in the United States at the Post Office in Miami, addressed to:

"Miss G. L. Pruett
Post Office Box 373
Mableton, Georgia 30059"

The return address which appeared at the top left-hand corner in small letters, read "Bogota, Colombia".

Agent Hanson, of the United States Customs Service, was "working the international mail" with a narcotic detector dog when the dog "stopped and alerted him" to the package from Colombia. After taking the parcel aside and removing the exterior wrapping, Hanson found a small box, encapsulating yet a smaller box. The smaller box housed a "powder puff" cannister, the contents of which revealed some loose white powder and a plastic bag containing a "brownish white substance".

The substance in the plastic bag was field-tested positive for cocaine and weighed at 84 grams.

After the initial confirmation of the contraband cocaine, Agent Hanson contacted the Drug Enforcement Administration which decided to make a "controlled delivery" of the parcel. It was rewrapped and forwarded by mail to Atlanta where Customs and DEA Agent Goodowens opened it and for the second time field-tested the contents.

After a second test proved positive, Goodowens substituted the cocaine contents of the bag with baking soda, leaving only what cocaine residue remained on the inside of the bag after it was initially emptied.

On July 10, 1975, Goodowens personally carried the package to its intended destination in Mableton, Georgia, placed it in the post office, and began surveillance operations. A notice slip was placed in Box 373, to inform the addressee that a package waited at the pick-up window.

At approximately 2:25 P.M. on July 14, 1975, Mrs. Cheryl Pruett arrived at the post office, removed the call notice from Box 373, presented it at the window, and received the package.

Agent Goodowens trailed her to her residence at 6806 Temple Circle in Mableton, where she was observed carrying the package into the house at 2:55 P.M.

At this point, he radioed this information to other agents, so that a search warrant could be issued. After about an hour and twenty minutes had elapsed, Goodowens received word that the warrant had issued. He and several narcotics agents from the Cobb County Police Department then approached the residence and knocked on the door. A Mr. Langford opened the door and shortly thereafter Mr. Pruett was observed coming up a flight of stairs from a "basement area". Goodowens identified himself and told Pruett that he had a search warrant covering his residence. He then became aware of the presence of Mrs. Pruett and her small daughter in the living room area. While the other agents fanned out to search various rooms in the house, Goodowens and Mr. and Mrs. Pruett remained in the living room. Several minutes later, one of the Cobb County Detectives called from the downstairs area "I think I have found it". Goodowens then went downstairs where he found the package on a desk in a work office area.

He returned to the upstairs living room with the package, placed it on a table in front of the Pruetts, and informed them that it contained cocaine. He advised them that they were under arrest for the possession of cocaine and read them their rights.

Goodowens observed that "the outer wrapper had been opened or at least had been torn and masking tape had been put on it . . .". The outer box "looked in apparently the same condition. There was really no way to tell whether it had been opened or not".

As Goodowens and the other agents were preparing to leave, a decision was made to seize the vehicle which transported the controlled substance. Goodowens testified that the normal procedure for such a seizure involved an inventory search, whereby possessions of the owner are returned to him "if it is not considered a part of the vehicle".

A search was conducted of the Pruett vehicle. Two suitcases were found in the trunk. Goodowens asked Mr. Pruett if they were his, to which he replied "yes". The suitcases were then opened revealing slightly over a pound of marijuana.

Evidence indicated that Pruett intended to distribute the marijuana. Goodowens testified that, in his experience, that quantity of marijuana, would not be obtained simply for personal use. Additionally, Detective Brice, also present during the opening of the suitcase, testified that the defendant stated in his presence that "he was going to take the marijuana to friends in Blue Ridge".

## II

### The Testimony of Mrs. Pruett

Mrs. Pruett was the only witness called by the defense. Her basic contention was that neither she nor her husband had any knowledge of the contents of the package received at the post office.

Mrs. Pruett's testimony regarding what transpired after she returned home with the package is as follows:

"When I got downstairs . . . I started to open the box and as I was pulling it back I said, 'I wonder who could have sent me a package from South America'. Jerry [Mr. Pruett] looked up and he said, 'How is it addressed?' and I said, 'Miss G. L. Pruett', and he said, 'You are not Miss'. He says, 'It's against the law to open other people's mail'. He said, 'That's from South America. It is not addressed to Mrs. G. L. Pruett. Do not open it'. He told me to reseal it. I didn't have any scotch tape. I only had masking tape . . . so I found the masking tape and I taped it—the box. I did as he told me and sealed the box back up."

According to Mrs. Pruett's testimony at no time were she and her husband aware of the contents of the package. She further denied any knowledge on her part of the marijuana found in the suitcases pursuant to the search of the automobile.

## III

### *Wiretap Testimony*

An integral part of the government's case concerned the highly controversial admission of testimony regarding a conversation between the defendant Mr. Pruett and one Toney Davis, gleaned through a wiretap of Davis' telephone. The actual tape recording was not introduced as evidence at trial.

The substance of a recorded conversation of March 31, 1975, between Mr. Pruett and Davis was recounted by James Strayhorn, a narcotics detective for the Cobb County Police Department and a key government witness. Strayhorn had been privy to the conversation as the officer in charge of conducting the wiretap in question. Strayhorn's testimony was as follows:

"Q. Have you had occasion to speak to Mr. Pruett?

"A. Yes, sir.

"Q. How many occasions have you spoken to Mr. Pruett?

"A. Three or four.

"Q. Have you had occasion to hear Mr. Pruett on the wire tap?

"A. Yes, sir.

"Q. On how many occasions have you heard Mr. Pruett?

"A. Several; many, many times.

"Q. Did you ever hear Mr. Pruett state his name or someone ask for Mr. Pruett and him reply during the wire tap?

"A. Yes, sir.

"Q. Are you able to recognize Mr. Pruett's voice?

"A. Yes, sir.

"Q. Did you overhear a conversation of March 31, 1975 while working on that wire tap?

"A. Yes, sir.

"Q. Did you overhear the conversation as it took place on the telephone?

"A. Yes, I did.

"Q. Who was the conversation between?

"A. Between Mr. Edwin Toney Davis and Mr. Gerald Pruett.

"Q. Can you tell us the substance of that conversation that took place?

"A. Yes, sir. Mr. Davis and Mr. Pruett discussed large quantity marijuana transactions, both transactions that had occurred in the past and possible transactions in the near future. During the conversation, Mr. Davis stated that he had seen an ounce of pharmaceutical cocaine which was available for him to purchase for $2,000. Mr. Pruett, after discussing the quality and physical description of this cocaine, suggested that he and Davis form a partnership and buy the ounce of cocaine and dilute it chemically and make a larger physical quantity and sell it for a profit."

The defense vigorously objected to the allowance of this testimony on the ground that it was not relevant under Rule 404 of the Federal Rules of Evidence.

The government countered that the conversation should be admitted to show "knowledge and intent" on the part of the defendant. The District Judge overruled the objection and the testimony was allowed to be considered by the jury.

## IV

### *Assignments of Error*

The appellant raises eight issues on appeal. Because two of these are dispositive, we need not address the remaining issues.

A. The defendant's motion for judgment of acquittal should have been granted as to Counts I, II, and III of the indictment.

Appellant contends that the trial court erred in failing to grant his motion for judgment of acquittal as to Counts I, II, and III of the indictment.

"In testing the sufficiency of the evidence in this case, it was the duty of the trial judge, before sending the case to the jury, to determine whether a reasonably minded jury must necessarily entertain a reasonable doubt about the evidence."

*United States v. Bright* [5 Cir. 1977] 550 F.2d 240, page 242.

A careful review of the evidence as proffered at trial convinces us that the defendant's motion should have been granted.

Count I charged the defendants with conspiring to import cocaine. The government pointedly argues that because Mr. Pruett received a parcel containing cocaine mailed from Bogota, Colombia, it must follow that he conspired in its importation with "others unknown to the grand jury at this time".

The thrust of the government's argument rests on the proposition that, ". . . at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown", *Rogers v. United States*, 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951); Accord, *United States v. Rivera Diaz*, 1 Cir., 1976, 538 F.2d 461; *United States v. Cabrera*, 5 Cir., 1971, 447 F.2d 956.

 A close reading of *Rogers* and its progeny indicates, however, that evidence must support the proposition that such a co-conspirator did exist and that the defendant did conspire with him. This record is devoid of evidence indicating that the defendant Pruett conspired with anyone, known or unknown, to receive the package mailed to his wife from an unknown source in Colombia. The conversation with Davis occurred on March 31, but the package was received on July 14. Leaving aside remoteness, the March conversation concerned an ounce of cocaine which might be acquired. There was no agreement to acquire it. Moreover, the package delivered in July contained not one ounce, but three.

In *Causey v. United States*, 5 Cir., 1965, 352 F.2d 203, the Court said:

"To establish the intent essential to a conviction for conspiracy the evidence of knowledge must be clear and not equivocal. A suspicion, however strong, is not proof and will not serve in lieu of proof. . . . It is true that the proof may be circumstantial or direct or both, but it must convince beyond a reasonable doubt that a conspiracy existed, that the defendant knew it, and with that knowledge intentionally did some act or thing to further or carry on that conspiracy." Id. at 207.

As in *Causey, supra,* the government proved that Pruett *could have been guilty* but it offered no firm proof that he, *in fact,* was guilty.

Count II of the indictment charged the Pruetts with importing the cocaine. Again, there is no substantive evidence that Mr. Pruett directed the cocaine to be sent or that he had any knowledge of its existence. The conversation Pruett had with Toney Davis involving the possible purchase of cocaine provided no substantive proof that Pruett had any part in the importation of the cocaine which arrived at his post office box on July 14.

The considerations hereinabove enumerated have all the indicia of applicability to Count III. There is no doubt that Mrs. Pruett had physical possession of the package and the husband was physically present in the residential area where the package was found. There is no evidence that either knew what was in the package or, knowing its contents, intended to make it his own. The officer who first retrieved the package at the Pruett home could not say with confidence that the package had, in fact, been opened or that Pruett was aware of its contents.

In sum, our appraisal of the proof on all counts leaves us with the firm conviction that a reasonably minded jury would have to have a reasonable doubt of Pruett's guilt of the charges preferred in Counts I, II, and III of the indictment.

This brings us to the final Count (No. VI) based on the marijuana found when the officers seized the car, found the suitcases, searched them, and uncovered the marijuana.

 It seems quite clear that if the seizure of the car, in which the marijuana was found, had been valid the search would

likewise have been valid, *Cooper v. California*, 1967, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. But therein lies the difficulty. The car was parked at the residence. It was not occupied. It was not moving. The officers had plenty of time to obtain, and did obtain, a warrant to search the house. No warrant was obtained for the seizure of the automobile.

We are impressed by the fact that as to the automobile there was more than "probable cause to believe". The officers knew for a fact that Mrs. Pruett, unwittingly or no, had indeed used the automobile to transport the cocaine from the post office to the house. Since they had absolute knowledge, was it necessary that they have that knowledge confirmed by an impartial magistrate before effecting seizure under nonexigent circumstances? We think that it was.

We have vigorously, but unsuccessfully, searched the precedents for a case on all fours with the facts presently before us. That being so, we feel compelled to adhere to the pronouncements of *Coolidge v. New Hampshire* (plurality opinion), 403 U.S. 443, 458, 463, 91 S.Ct. 2022, 2036, 29 L.Ed.2d 564, which enunciated the idea (Footnote 20) that for the initial intrusion "there is a significant constitutional difference between stopping, *seizing* (emphasis added), and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose" and that the officers were legally on the property is "immaterial". While the car was being used for the illegal purpose of possessing marijuana, the officers did not know that and did not make the seizure for that reason. They seized because the car had been used to transport cocaine, a matter about which a warrant for seizure could readily have been, but was not, obtained.

Consequently, we must hold that the seizure of the automobile infringed Fourth Amendment rights and the marijuana should have been suppressed. This disposes of Count VI.

The judgment of the District Court is reversed. The case is remanded with directions to dismiss the indictment.

REVERSED and REMANDED.