**UNITED STATES of America,
Plaintiff-Appellee.**

v.

**Siro T. GUTIERREZ,
Defendant-Appellant.**

**No. 76–2907.**

United States Court of Appeals,
Fifth Circuit.

Sept. 28, 1977.

Dick DeGuerin, Houston, Tex., for defendant-appellant.

James R. Gough, U. S. Atty., George A. Kelt, Jr., Jim C. Ezer, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before COLEMAN, Circuit Judge, KUNZIG, Judge,* and GEE, Circuit Judge.

KUNZIG, Judge:

This case comes to us on direct appeal. Appellant Siro T. Gutierrez and a co-defendant, one Gilbert G. Gonzales (who has not joined in this appeal), were tried and convicted by a jury in the Southern District of Texas (Houston Division). Appellant Gutierrez was charged, on several counts, with possession of heroin with intent to distribute and with conspiracy to distribute. 21 U.S.C. § 841(a)(1); 21 U.S.C. § 846; 18 U.S.C. § 2 (1970).[1] Following his conviction on all counts, Gutierrez was sentenced to 30 years imprisonment and 6 years special parole. Gutierrez takes this appeal on the issue of the sufficiency of the evidence, urging that the circumstantial evidence adduced at his trial is, as a matter of law, not sufficient to support his conviction. We agree with appellant and we reverse and set aside the judgment entered below.

To understand the Government's case against Gutierrez, it is necessary at the outset to review the activities of Gilbert G. Gonzales (Gutierrez' nephew and co-defendant at trial). Gonzales met an undercover agent of the Drug Enforcement Administration (DEA) to whom he agreed to sell heroin. The sales, four in all,[2] took place as planned.

The transactions followed a similar pattern. On each occasion, Gonzales (the nephew) would first meet with Conway (the DEA agent) and arrange the terms of sale. After having thus settled on the price and amount, Gonzales and Conway would rendezvous later on to make the actual exchange. All told, Gonzales marketed approximately 4 ounces of heroin to Conway for some $2900 of marked currency. On February 12, 1975, during the last such sale, Conway gave a signal to other agents who then arrested Gonzales.

After the first agreement between Gonzales and Conway, and in an effort to find Gonzales' source, DEA agents followed him. They saw Gonzales go to his uncle's house during that period before Gonzales returned to Conway and turned over the heroin. In a like fashion, agents observed Gonzales meet with his uncle or go to his house prior to consummating the two other transactions charged. Following Gonzales' arrest, law enforcement agents executed a search warrant on his uncle's house. That search of Gutierrez' home turned up $400 in marked bills in a bank bag within a chest in a closet. This money was the same that had passed from agent Conway to Gonzales earlier.[3]

This sequence of events formed the basis for an indictment against Gutierrez and Gonzales. Appellant Gutierrez was charged on seven counts with conspiracy, possession, and distribution of heroin arising out of

---

* Judge, United States Court of Claims, sitting by designation.

1. 21 U.S.C. § 841(a)(1) provides as follows:
§ 841. Prohibited acts A—Unlawful acts
(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
21 U.S.C. § 846 provides that:
§ 846. Attempt and conspiracy.
 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy. (Pub.L. 91–513, title II, § 406, Oct. 27, 1970, 84 Stat. 1265.)

18 U.S.C. § 2 states:
§ 2. Principals.
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. (June 25, 1948, ch. 645, 62 Stat. 684; Oct. 31, 1951, ch. 655, § 17b, 65 Stat. 717.)

2. The sales occurred on January 25 and 29, February 7 and 12, 1975. Gutierrez was not charged with the January 29 sale.

3. There was $2,459 in the chest; $400 was marked.

three sales made by his nephew to law enforcement officers. Gonzales and Gutierrez were tried together and, despite the fact that Gutierrez took the stand on his own behalf, Gutierrez was convicted on all counts. Appellant moved the court below for a judgment of acquittal, claiming that the evidence established neither the existence of any conspiracy nor his knowing participation and claiming further that no proof connected him to possession or distribution of the drug. The trial court denied the motion, entering judgment against both defendants in accordance with the jury verdict. Appellant contends that the trial court erred and the issue, sufficiency of the evidence, is now before us.

The government asserts that there is a pattern, a repetition of contact between uncle and nephew, shown here which, taken together with the $400, does establish a conspiracy. The Government maintains that these are factual matters from which a reasonably minded jury found conspiracy. Conspiracy having been found, so the Government argues, the substantive offenses are attributable to the uncle.

Appellant replies that mere association with a lawbreaker is not sufficient to show knowing and willing membership in a conspiracy. In the face of Gutierrez' uncontradicted trial testimony that the $400 was received from Gonzales as repayment of money owed, appellant claims that the jury could not have reasonably inferred either the existence of conspiracy or Gutierrez' participation. Appellant argues that since no evidence at all, apart from actions imputed from the alleged co-conspirator, supports the substantive counts, they too must fail if the conspiracy count fails.

Upon careful examination of the briefs and of the trial transcript, and after considering the oral arguments, this court finds for appellant. We reverse the conviction.

This circuit has only recently had occasion to address the standard applicable in a case such as this. In a carefully constructed passage which we quote at length, Judge Ainsworth, speaking for the court, said:

In a criminal case the Government must prove every element of the offense beyond a reasonable doubt. In this respect, circumstantial evidence is intrinsically no different from direct evidence, . . . and the same test for judging the sufficiency of the evidence should apply whether the evidence is direct or circumstantial. . . . Therefore, in testing the sufficiency of the evidence in this circumstantial evidence case it was the duty of the trial judge, before sending the case to the jury, to determine whether a reasonably minded jury must necessarily entertain a reasonable doubt under the evidence. . . . In other words, "a motion of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of the essential elements of the crime charged." . . . (citations omitted)

*United States v. Barrera*, 547 F.2d 1250 (5 Cir. 1977).

Our analysis of the evidence in this case proceeds under this standard.

*The Conspiracy Count*

 The essential elements of criminal conspiracy are an agreement to commit a crime followed by an overt act in furtherance of the agreement, *e. g., United States v. Barrera, supra*; *United States v. Isaacs*, 516 F.2d 409 (5 Cir.), *cert. denied*, 423 U.S. 936, 96 S.Ct. 295, 46 L.Ed.2d 269 (1975). There must be proof beyond reasonable doubt that a conspiracy existed, that the accused knew of it, and that the accused, with that knowledge, voluntarily became a part of it. *Barrera, supra.*

 The Government has shown that Gutierrez and Gonzales associated with one another and that they did so in close proximity (temporarily) to the commission of a crime. But that alone is not enough. We have held that mere association with other persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy. *Barrera, supra*; *United States v.*

*Menichino*, 497 F.2d 935 (5 Cir. 1974); *United States v. Owen*, 492 F.2d 1100 (5 Cir. 1974). Nor does proximity to the crime tip the balance. It is well established that even actual presence at the scene of the crime is not sufficient. *Barrera, supra.* See *United States v. Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940); *United States v. Owen*, 492 F.2d 1100 (5 Cir. 1974).

This case reduces itself to the question whether the $400 can be, as counsel for Gutierrez aptly puts it, the "something more" than mere association required to sustain a conviction. Despite close surveillance, and despite visits by Gonzales to his uncle's house and at least one actual meeting between the two, there is simply no *observation* of anything passing between the two, no money, no drugs, nor any package of any sort. Nor was there any *statement* made by Gonzales to anyone that he was going to visit Gutierrez in order to obtain anything. Indeed, Gonzales' statements as related by DEA agent Conway at trial indicate that Gonzales had no one source of supply but, rather, shopped around before each sale.[4] The $400, then, is the crux of this case.

The officers did find marked money on the premises. This was the strongest evidence presented against Gutierrez. But, though undoubtedly of some initial probative value, it does not create so strong an inference of guilt as can support a conviction. An essential element in the conspiracy must be agreement and knowing participation; that element remains unproved here. While a jury might infer guilty knowledge from the mere fact of the marked money, it could also have concluded that the money came to Gutierrez' possession through any one of a number of innocent circumstances.[5] In the absence of evidence that Gutierrez received that money in fur-

therance of a criminal venture, the money in his possession loses its probative value entirely. As in *United States v. Pruett*, 551 F.2d 1365 (5 Cir. 1977) the Government has proved only that Gutierrez could have been guilty, not that he, *in fact*, was guilty. In *Pruett, supra*, the court said that:

"To establish the intent essential to a conviction for conspiracy the evidence of knowledge must be clear and not equivocal. A suspicion, however strong, is not proof and will not serve in lieu of proof. . . . It is true that the proof may be circumstantial or direct or both, but it must convince beyond a reasonable doubt that a conspiracy existed, that the defendant knew it, and with that knowledge intentionally did some act or thing to further or carry on that conspiracy."

*Pruett, supra, quoting* from *Causey v. United States*, 352 F.2d 203 (5 Cir. 1965).

We find that the evidence adduced was inadequate to warrant the inference that appellant knew of the conspiracy, must less the inference that appellant knowingly and willingly participated in it.

Our conclusion is strengthened by the common sense observation that the co-defendants, being relatives, had every reason to associate. The natural inference is that such contact springs from consideration of family ties. And, though every case such as this must turn on its own facts, we find our decision here to be clearly consistent with out prior rulings. The Government relies on *United States v. Gomez-Rojas*, 507 F.2d 1213 (5 Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). But the Government in that case, unlike the situation here, showed a conspiracy and linked Gomez-Rojas to it by a co-conspirator's statement. More to the point is *United States v. Suarez*, 487 F.2d 236 (5 Cir. 1973),

---

**4.** Conway's testimony was to the effect that the quality of the heroin varied from sale to sale, depending upon Gonzales' supplier. The indications are that, while the first and third sales came from a single source, the remainder did not.

**5.** As it happens, Gutierrez took the stand and gave an explanation for receiving money from

his nephew, stating that the $400 was cash remaining from his nephew's recent repayment of a $500 debt. This is simply illustrative of one innocent explanation. The point is not that the jury was bound to credit this testimony; the point is that, regardless of any defense testimony, innocent inferences remain.

cert. denied, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d. 878 (1974). In that case (which involved heroin distribution though not conspiracy), Government agents saw Leites Rufino Chiong enter a house carrying a bag in circumstances which suggested involvement with heroin dealers. This court observed, however, that the circumstances also permitted an inference of innocence and reversed the conviction. *See also United States v. Barrera, supra*; *United States v. Murray*, 527 F.2d 401, 404 (5 Cir. 1976).

### The Substantive Counts

In its brief as well as in oral argument, the Government relies on appellant's alleged participation in the conspiracy to support the substantive counts. Our review of the trial transcript shows no evidence indicating that Gutierrez ever possessed any heroin. In light of our finding with respect to the conspiracy charge, then, the substantive counts must fail.

In summary, we find the evidence adduced at trial to be, as a matter of law, insufficient to support a conviction. The Government did not produce evidence sufficient to show that appellant knew of any conspiracy much less that he intentionally participated. Nor did the Government prove the substantive counts. Therefore, the motion for acquittal should have been granted.

Accordingly, we reverse and set aside the judgment entered by the District Court and order the acquittal of appellant Gutierrez.

· REVERSED AND RENDERED.