# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREY ZHURBIN, | § | |
| | § | No. 681, 2013 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in |
| v. | § | and for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: October 8, 2014
Decided: October 17, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **RIDGELY**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant.

Karen V. Sullivan, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice:

# I. INTRODUCTION

Andrey Zhurbin appeals from a conviction by a jury for leaving the scene of a collision, in violation of 21 *Del. C.* § 4201, following an accident that took place in the Delaware Park Casino parking lot. Zhurbin alleges on appeal that his conviction should be vacated because the collision occurred on private property, and he contends that a collision must occur on a public highway to give rise to an offense under 21 *Del. C.* § 4201. But Zhurbin misreads the Delaware Code; a collision can occur on public or private property for purposes of § 4201, based on the plain language of the statute and the General Assembly's express purpose in amending a previous version that did have such a limitation. Further, because Zhurbin did not raise this issue before the Superior Court, any failure of the court to grant a judgment of acquittal because of this issue must be plain error, which it was not. Zhurbin's appeal is therefore without merit.

# II. BACKGROUND

The relevant facts from the record are undisputed. On the evening of October 9, 2012, Zhurbin was playing blackjack at the Delaware Park Casino when he was asked to leave for engaging in "disorderly conduct." Because he appeared to be intoxicated, the casino's security guard did not want Zhurbin to drive himself. Another patron, who did not appear to know Zhurbin, volunteered to take him home. The security guard watched the two exit the casino parking lot in the other patron's car. But a short time later, another patron saw Zhurbin's Pontiac Firebird crash in the casino's parking lot, hitting multiple median guards and spinning into a ditch, before exiting onto the public street. That patron called 911 for assistance, then followed the car to a Denny's restaurant off of

1

Route 273. When the police arrived, the patron identified Zhurbin as the person exiting the vehicle. Zhurbin at first told the responding police officer that the Firebird was not his, but he had the keys to the car in his pocket, and he was injured in a manner consistent with the accident described by the casino patron and the damage to the vehicle. Zhurbin later insisted to the police officer that his friend "Bob" had been driving, but he could not describe Bob or where he had gone after parking the car.

Zhurbin was indicted on four counts related to the accident: driving under the influence, leaving the scene of an accident, removal of a vehicle from an accident scene, and no proof of insurance. He was acquitted by a jury of driving under the influence, and the state dismissed the fourth count after Zhurbin provided evidence of insurance at trial. Zhurbin was convicted of the remaining charges.[1] His only argument on appeal is that his conviction for leaving the scene should be vacated, because the collision occurred on private property, and he alleges that an accident giving rise to a conviction for leaving the scene under § 4201 must occur on public property based on § 4101.

### III. ANALYSIS

As noted, Zhurbin's argument regarding § 4201 was not presented below. Even if it was, and the Superior Court had ruled upon it, we review legal rulings, including the interpretation of statutes, *de novo*.[2] Our analysis of the parties' arguments begins with the plain language of the statute: "Where a statute contains unambiguous language that

---

[1] Zhurbin contends that his conviction for removal of a vehicle was likewise improper, but the fine assessed ($75) was beneath the jurisdictional amount required to challenge it on appeal. Opening Br. at 10, n.6. He does not challenge his conviction for careless driving, which also resulted in a $75 fine.

[2] *See, e.g.*, *CML V, LLC v. Bax*, 28 A.2d 1037, 1040 (Del. 2011).

2

clearly reflects the intent of the legislature, then the language of the statute controls."[3]

We also "'read each [relevant] section [of the statute] in light of all the others to produce a harmonious whole.'"[4] But when a statute is ambiguous, the legislative record may be helpful to resolve the ambiguity. Thus, "this Court may refer to parts of the legislative record to establish the purpose of legislation where the record reveals more information about the enactments."[5]

Here, we must interpret 21 *Del. C.* § 4201(a), which establishes the duty of a driver involved in a collision resulting in property damage or injury. The statute provides in relevant part:

> The driver of any vehicle involved in a collision resulting in apparent damage to property shall immediately stop such vehicle at the scene of the collision. Said stop should be made as close to the scene of the collision as possible without obstructing traffic more than necessary. . . . If such collision resulted in injury or death, the driver shall comply with § 4203 of this title. . . . If the damage resulting from such collision is to the property of the driver only, with no damage to the person, property of another, or the environment, the driver need not stay at the scene of the collision but shall immediately make a report of the damage resulting as required by § 4203 of this title.[6]

Zhurbin admits that on its face, § 4201 is not limited to collisions that occur on public roadways, nor can he find any such restriction in Chapter 42, which generally

[3] *Hoover v. State*, 958 A.2d 816, 820 (Del. 2008) (citing *Sandt v. Del. Solid Waste Auth.*, 640 A.2d 1030, 1032 (Del. 1994)).

[4] *Progressive N. Ins. Co. v. Mohr*, 47 A.3d 492, 496 (Del. 2012) (citing *CML V, LLC*, 28 A.3d at 1041). *See also United Savings Ass'n v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.") (citations omitted).

[5] *Progressive N. Ins. Co.*, A.3d at 496 (citing *Stiftel v. Malarkey*, 378 A.2d 133, 138 (Del. Ch. 1977)).

[6] 21 *Del. C.* § 4201(a).

governs accident reporting. But he argues nonetheless that § 4201 is modified by 21 *Del. C.* § 4101(a), which states that "[t]he provisions of this title [21] relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except . . . [w]here a different place is specifically referred to in a given section." A highway is defined elsewhere in Title 21 as "the entire width between boundary lines of every way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular travel, but does not include a road or driveway upon grounds owned by private persons . . . or other institutions."[7] Because § 4201 is not specifically mentioned as exempt in § 4101, and § 4201 does not explicitly refer to a "different place," Zhurbin contends that violations of § 4201 can only occur "upon highways," not private driveways or parking lots.

Notwithstanding Zhurbin's argument, a plain reading of § 4201 itself and Chapter 42 more generally suggests that "the driver of any vehicle involved in an accident" means *any* vehicle, not only one on a public highway.[8] Moreover, § 4201 references § 4203, which deals with the duty of a driver to report an accident to the police. Section 4203 requires a driver first to comply with § 4201 or § 4202, the related provision that deals

---

[7] 21 *Del. C.* § 101(22).

[8] The State argues that Zhurbin's argument is incorrect because § 4201 does not "relat[e] to the operation of vehicles" within the meaning of § 4101. But by its plain terms, § 4201 clearly refers to the "operation" of a vehicle, including its requirement that the driver stop the vehicle after the collision takes place and then move the vehicle if needed to prevent obstructing traffic. Collisions, by definition, tend to involve at least one vehicle in operation, and the statute refers to the duty of a "driver" to stop at the scene, likely for that obvious reason. As we have previously held, "operation" is a broader term than driving, but driving a vehicle automatically constitutes operating one: "while all driving is necessarily operation of a motor vehicle, not all operation is necessarily driving." *McDuell v. State*, 231 A.2d 265, 267 (Del. 1967).

4

with collisions resulting in death or injury to a person, and then mandates reporting to the police only when:

> (1) When the collision results in injury or death to any person [*i.e.*, when § 4202 applies]; (2) When the collision *occurs on a public highway* and results in property damage to an apparent extent of $500 or more; *or* (3) When it appears that *any* collision involving a driver whose physical ability is impaired as a result of the use of alcohol or drugs or any combination thereof.[9]

If, as Zhurbin claims, § 4101 applies to § 4201 and requires a collision to occur on a public highway for the driver to be liable for not stopping, the specific reference in § 4203 to "public highway" would not make sense. "We presume that the General Assembly purposefully chose particular language and therefore construe statutes to avoid surplusage if reasonably possible."[10]

Most important, § 4201 was amended in 1988 to remove explicit language requiring that an accident occur "on the public highways."[11] That is, before 1988, the first sentence of § 4202(a) read:

> The driver of any vehicle involved in an accident *on the public highways* resulting in apparent damage to property shall immediate stop such vehicle at the scene of the accident.[12]

After the 1988 amendment, that section changed to:

> The driver of any vehicle involved in an accident resulting in apparent damage to property shall immediately stop such vehicle at the scene of the accident.[13]

---

[9] 21 *Del. C.* § 4203(a) (emphasis added).

[10] *Sussex County Dept. of Elections v. Sussex County Republican Comm.*, 58 A.3d 418, 422 (Del. 2013).

[11] *See* 66 Del. Laws. ch. 238, § 1 (1988).

[12] 21 *Del. C.* § 4201(a) (1987) (emphasis added).

"In interpreting a statute, our primary job is to honor its apparent purpose based on a sensible reading of the text. . . ."[14] In the context of drafting complex agreements, even highly paid scriveners will often fail to write with perfect clarity. That is also true of a state legislature, such as our General Assembly, charged with the difficult task of crafting a comprehensive criminal code governing a wide range of human behavior.[15]

In advancing his argument, Zhurbin contends that we may consider other parts of the Code in interpreting § 4201, but not the form of the statute itself as it has evolved over time. We disagree. It would be disrespectful of our General Assembly for us to blind ourselves to the fact that § 4201 used to contain an express limitation to public roadways that was specifically deleted. Without referring to any statement at a legislative hearing or even the synopsis of the amending bill, the obvious import of that amendment was to eliminate any requirement that a collision involving injury to property has to occur on public roadways in order for the obligations in § 4201 to apply. It is not a

---

[13] 66 Del. Laws. ch. 238, § 1 (1988). The sentence was altered again by a 2008 amendment, substituting the word "collision" for "accident." 76 Del. Laws, ch. 401, §§ 1-2 (2008).

[14] *Nationwide Mut. Ins. Co. v. Korngold*, 318 A.2d 606, 609 (Del. 1974) (citation omitted); *see also* 73 AM. JUR. 2d *Statutes* § 146 (1974) ("To apply a statute the fundamental rule is to ascertain and give effect to the intent of the legislature."); ROBERT A. KATZMANN, JUDGING STATUTES 4 (2014) ("Our constitutional system charges Congress, the people's branch of representatives, with enacting laws. So, how Congress makes its purposes known, through text and reliable accompanying materials constituting legislative history, should be respected, lest the integrity of legislation be undermined.").

[15] *See, e.g.*, *E. I. Du Pont De Nemours & Co. v. Clark*, 88 A.2d 436, 532 (Del. 1952) ("The court must necessarily be guided by the presumption that the Legislature did not intend an unreasonable, absurd or unworkable result. If from the statute as a whole the object sought to be attained or the general intent underlying the statutory language can be ascertained, it will be given effect by the courts.").

controversial exercise of statutory interpretation to determine that legislative amendments have meaning and to give them effect.[16]

If the General Assembly's intent in deleting the public roadway limitation in § 4201 was solely to avoid surplusage from § 4101 for the sake of Code-drafting purity, one would expect Zhurbin to point to legislative history to that effect. But he cannot, and there is an important reason why that would be an odd way to understand the purpose of the 1988 amendment. Before 1988, the same as it does today, § 4202 did not contain any requirement for a collision to occur on public roadways.[17] Section 4202 deals with the category of collisions that might be thought to be the most important: those involving injuries or death to human beings and not merely property damage. Yet § 4202 does not mention § 4101. Zhurbin's argument logically means that a driver could collide with a pedestrian in a shopping center parking lot, and seriously injure or even kill the pedestrian, and then flee the scene without consequence. That is, because § 4202, like § 4201, is silent on whether it applies to collisions on private property but is written to suggest it applies to *any* collision, Zhurbin's argument about § 4201 would apply to § 4202 as well.

---

[16] *See, e.g.*, 1A SUTHERLAND STATUTORY CONSTRUCTION § 22.30 (5th ed. 1992) ("[T]he mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one."). In two unanimous decisions, the U.S. Supreme Court has also quoted *Stone v. INS*, 514 U.S. 386, 397, 115 S.Ct. 1537, 131 (1995), for the proposition that "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." See *U.S. v. Quality Stores, Inc.*, 134 S.Ct. 1395 (2014); *Pierce County, Wash. v. Guillen*, 537 U.S. 129, 145 (2003).

[17] *See* 54 Del. Laws. ch. 160, § 1 (1963).

7

Courts should strive to give effect to the apparent intention of the legislature when that yields a sensible result.[18] The apparent intent of the General Assembly in removing the words "on the public highways" was to do just that: eliminate the previous limitation on the application of § 4201 beyond public highways. The General Assembly plainly intended to put collisions involving property on a more equal footing with collisions involving injury or death for the purposes of requiring drivers to stop, not, as Zhurbin would have us hold, that drivers involved in collisions resulting in death or injury on private roadways are also not required to stop.

To the extent that Zhurbin attempts to blind us to the specific deletion of words by the legislature, we decline to do so. That would be disrespectful of the General Assembly. Moreover, because Zhurbin must reach outside of the statutory provision at issue, and even the chapter dealing with the duty of drivers to stop, it is appropriate for us to widen our own lens. The obvious effect of the deletion is as we have said. But to the extent that Zhurbin has any doubts, the synopsis to the amending bill literally underlines the intent behind the proposed change: "This Act addresses changes as to required procedures in traffic accidents: 1. Drivers would be required to stop at the scene of <u>all</u> accidents. At the present time, drivers are not required to stop at the scene of property

---

[18] *See, e.g.*, *Application of Penny Hill Corp.*, 154 A.2d 888, 891-92 (Del. 1959) ("To determine the significance of these clauses as they appear in this statute, we must look into the purpose and intention of the Legislature and ascertain its meaning from an examination of every section of the statute which in any way deals with the question raised. They must be given a reasonable and sensible meaning, having in mind such intent and purpose.") (citations omitted).

damage accidents on private property."[19] Thus, the only relevant legislative history is consistent with the obvious intent of the amendment.

For these reasons, Zhurbin's argument that he was not validly convicted of an offense under § 4201 is without merit. Moreover, Zhurbin did not make any claims about the appropriateness of charging him with a § 4201 offense for an accident that occurred on private property during the trial in the Superior Court. "We generally decline to review contentions not raised below and not fairly presented to the trial court for decision."[20] To warrant review on appeal when the issue has not been fairly presented, there must be "plain error." That is, the error complained of must be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[21] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[22]

Zhurbin has not met this standard. Even if Zhurbin's reading of § 4201 was plausible, a trial judge cannot be faulted for plain error when he attempts, without objection, to apply a seemingly applicable statute in a reasonable fashion. Plain error must be that – plain and obvious – and trial judges are generally entitled to rely upon the

---

[19] App. to Answering Br. at 4 (emphasis in original).

[20] *Turner v. State*, 5 A.3d 612, 614 (Del. 2010).

[21] *Id.* (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986); *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982)) (internal quotations omitted).

[22] *Wainwright*, 504 A.2d at 1100 (citing *Bromwell v. State*, 427 A.2d 884, 893 n.12 (Del. 1981)).

parties themselves to frame the statutory issues if there is a concern that a statute does not fairly apply.

As it was, although the Superior Court did err in instructing the jury, it did so in a way that favored Zhurbin. In enumerating the elements of the charge of leaving the scene, the Superior Court instructed the jury that it needed to find that the State had proven beyond a reasonable doubt that: "*The Defendant drove a motor vehicle on a public roadway*; the Defendant was involved in a collision; the collision resulted in apparent damage to property of someone other than the Defendant; and the Defendant failed to stop the vehicle at the scene of the collision."[23] Because driving on a public roadway when the collision occurred was not actually an element of the crime, any error in including it in the jury charge was harmless. There is no contention that the jury did not have sufficient evidence to conclude beyond a reasonable doubt that Zhurbin committed a violation of the statutorily required elements. Zhurbin thus suffered no "manifest injustice" warranting reversal.

For the foregoing reasons, the judgment of the Superior Court is hereby AFFIRMED.

---

[23] App. to Opening Br. at 40 (emphasis added).

10