IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMARR CANNON, | § | |
| | § | No. 228, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. 1706001541 (K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | |
| | § | |
| | § | |

Submitted: October 24, 2018
Decided: December 12, 2018

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

### O R D E R

On this 12th day of December 2018, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Appellant, Jamarr Cannon, appeals from a Superior Court jury verdict finding him guilty of Tier 5 Possession of Cocaine, Drug Dealing Tier 4 Cocaine, Resisting Arrest, Possession of Drug Paraphernalia, and Failure to Have Insurance Card. Cannon's sole claim on appeal is that the Superior Court erred in denying his motion to suppress all evidence derived from a traffic stop for a suspected window tint violation. Cannon contends that the Superior Court erred for three reasons.

First, he argues there was no reasonable, articulable suspicion for the stop in the first place. Second, he argues there was no reasonable suspicion[1] for his continued detention beyond the scope of the initial stop. Finally, he argues that the search of his person exceeded the scope of a *Terry*[2] frisk.

(2) Cannon was arrested and charged with the crimes underlying this appeal on June 2, 2017, following a traffic stop. Trooper Macauley stopped Cannon's vehicle for a suspected violation of Delaware's window tint law "[d]ue to the window tint on the front windshield."[3] Trooper Macauley looked up the registration to determine whether the vehicle had a tint waiver. It did not.

(3) When Trooper Macauley approached the vehicle after stopping it, Cannon appeared extremely nervous: his carotid artery was pulsating, his hands were shaking, and he failed to make eye contact. Moreover, Trooper Macauley observed that the vehicle's windows were very clean and smelled an overwhelming odor of air fresheners. Because of this, Trooper Macauley suspected that Cannon was a drug trafficker.

(4) After speaking with Cannon, Trooper Macauley returned to his patrol vehicle to process an e-warning for the tint violation and run routine checks on

---

[1] In his brief, Cannon uses the term "probable cause" when discussing the standard for continuing a detention, Appellant's Second Am. Opening Br. at 11-12; the correct standard is reasonable suspicion, *see Loper v. State*, 8 A.3d 1169, 1175 (Del. 2010).

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

[3] App. to Appellee's Answering Br. at B2.

Cannon's license and registration and do a criminal history check. The criminal history check revealed that Cannon was on federal and state probation and had a history of violent felonies including resisting arrest and vehicle pursuits. While conducting the routine checks, he contacted a nearby canine unit to request a sniff test of Cannon's vehicle, but that unit was not immediately available.

(5)    Because of Cannon's extensive criminal history and federal probation status, these routine checks took longer than usual. Trooper Macauley did not prolong the stop to allow for the canine unit to arrive. The whole time he was in his patrol vehicle, he was processing the e-warning for the tint violation and checking Cannon's criminal history. The entire traffic stop lasted 14 minutes.

(6)    When the process for printing the warning and checking Cannon's criminal history concluded, Trooper Macauley exited his vehicle to deliver the warning to Cannon. He instructed Cannon to exit his vehicle and meet him at the back of the vehicle, so he could explain the warning. Trooper Macauley testified that it was unsafe to explain the warning to Cannon from the driver's window because he would have had to stand in the roadway given how close to the roadway Cannon's vehicle was parked.

(7)    As Cannon exited the vehicle, Trooper Macauley noticed a bulge in his waistband that, according to Macauley, was consistent with the size and shape of a handgun. Consequently, Trooper Macauley conducted a pat-down search, which

3

revealed that the bulge was "a vacuum-sized, tightly-packaged, small brick of cocaine."[4]  Trooper Macauley then took Cannon into custody.  The canine unit arrived later.  Cannon was thereafter charged with the five crimes mentioned above as well as operating a vehicle with illegal window tint.

(8)    Prior to trial, Cannon filed a motion to suppress all evidence acquired from the traffic stop.  After a hearing, the Superior Court denied Cannon's motion.  It made three findings.  First, the court found that the initial stop was lawful "because Mr. Cannon's vehicle had an improper window tint" and "the trooper discovered Mr. Cannon's vehicle did not have a [tint] waiver."[5]  Second, the court reasoned that the purpose of Trooper Macauley's initial stop had expired when he requested that Cannon exit the vehicle, and therefore asking Cannon to exit the vehicle was a second seizure; but there was reasonable suspicion to justify the continued seizure for three reasons: (1) Cannon's nervousness, including trembling hands, rapidly pulsating carotid artery, and confusion in responding to questions; (2) Cannon's extensive criminal background, which included drug dealing and firearms charges; and (3) the overwhelming odor of a masking agent (air fresheners) emanating from the vehicle and the vehicle's extreme cleanliness.  Finally, the court found, "Trooper Macauley was permitted to pat down Mr. Cannon for weapons

---

[4] *Id.* at B5.
[5] *Id.* at B10-11.

because Mr. Macauley noticed the bulge between his waistband," which was "the size of a handgun."[6]

(9)     Following a bench trial, Cannon was found guilty of all charges except the illegal window tint.

(10)   "We review the grant or denial of a motion to suppress for an abuse of discretion."[7]   "[T]his Court will defer to the factual findings of a Superior Court judge unless those findings are clearly erroneous."[8]   When "reviewing the denial of a motion to suppress evidence based on an allegedly illegal stop and seizure, we conduct a *de novo* review to determine whether the totality of the circumstances, in light of the trial judge's factual findings, support a reasonable articulable suspicion for the stop."[9]

(11)   Cannon first contends that Trooper Macauley lacked reasonable suspicion that he was violating the vehicle window tint law (21 *Del. C.* § 4313). Cannon, however, did not adequately raise this argument in the trial court. His motion to suppress did not contest Trooper Macauley's reason for stopping his vehicle. It focused on the alleged unlawfulness of Cannon's continued detention beyond the scope of the initial traffic stop.

---

[6] *Id.* at B13.
[7] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008).
[8] *State v. Rollins*, 922 A.2d 379, 382 (Del. 2007).
[9] *Lopez-Vazquez*, 956 A.2d at 1285.

(12) Accordingly, this Court reviews this claim under the plain error standard of review.[10] Under this standard, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[11] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[12] There is no such error here. Trooper Macauley testified that he stopped Cannon "[d]ue to the window tint on the *front windshield*."[13] Under Delaware law, it is likely illegal to have any tint covering the entire windshield—regardless of its transparency.[14]

(13) Second, Cannon contends that Trooper Macauley impermissibly, without reasonable suspicion, extended the scope of the stop and therefore subjected him to a "second" seizure when he called the canine unit and ordered Cannon to exit the vehicle to explain the warning. However, a request for a canine unit does not exceed the scope of a traffic stop when the unit is called while the officer performs

---

[10] *Zhurbin v. State*, 104 A.3d 108, 113 (Del. 2014).

[11] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (en banc).

[12] *Id.*

[13] App. to Appellee's Answering Br. at B2 (emphasis added).

[14] The "70 percent rule," which allows window tint if it provides a light transmission of at least 70 percent, appears to apply only to the windows to the immediate right and left of the driver and not to the windshield. *See* 2 *Del. Admin. C.* § 2277-3.1.2; *see also id.* § 2277-3.1.1 (providing that glass coating material (film tint) installed upon a windshield shall not extend (1) below the AS-1 mark or (2) if there is no such mark, more than five inches down from the uppermost part of the windshield).

routine checks within the scope of the initial stop.[15]  The critical question is "whether conducting the sniff 'prolongs'—*i.e.*, adds time to—'the stop.'"[16] Because Trooper Macauley called the canine unit while waiting upon the results of the background checks, he did not impermissibly "prolong" the stop.[17]  Moreover, the canine unit did not arrive until after Trooper Macauley took Cannon into custody for the cocaine he discovered in his waistband, meaning neither the call to, nor the subsequent presence of, the canine unit caused any extended detention.

(14)  Furthermore, Trooper Macauley did not extend the detention beyond the scope of the traffic stop when he asked Cannon to exit his vehicle.  An officer "may order the driver or a passenger to exit the car after a valid traffic stop, and that order is not a 'seizure' under the Fourth Amendment."[18]  So long as such an order does not "measurably extend the duration of the stop," it does not amount to a "second" seizure under the Fourth Amendment.[19]  The officer's having Cannon exit the vehicle so the officer could explain the warning for the tint violation, under the circumstances involved here, did not "measurably extend the duration of the stop."[20]

---

[15] *See Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (holding that a dog sniff conducted *after completing* the traffic stop violates the Fourth Amendment); *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (holding that a dog sniff conducted *during* a lawful traffic stop does not violate the Fourth Amendment).

[16] *Rodriguez*, 135 S. Ct. at 1616.

[17] *Id.*

[18] *Loper*, 8 A.3d at 1174; *accord Arizona v. Johnson*, 555 U.S. 323, 331 (2009).

[19] *Johnson*, 555 U.S. at 333.

[20] *Id.*; *see also Caldwell v. State*, 780 A.2d 1037, 1049 (Del. 2001) (en banc) (finding a second seizure where the officer's actions were "entirely unrelated" to the parking violation).

Therefore, because the initial stop was lawful, as discussed above, and because Trooper Macauley ordered Cannon to step out of the vehicle to receive an explanation for the warning, Trooper Macauley neither impermissibly extended the stop beyond its initial scope nor subjected Cannon to a second seizure.

(15)   Finally, Cannon contends that Trooper Macauley exceeded the scope of the *Terry* frisk because "there was absolutely no testimony that the frisk yielded evidence that the officer, by feel, felt was immediately seizable when he felt the item."[21]   Cannon neglected to raise this argument in his motion to suppress before the Superior Court.   The motion to suppress exclusively addressed whether Trooper Macauley extended the traffic stop beyond the initial purpose without reasonable suspicion.   At the suppression hearing, Cannon's trial counsel never questioned Trooper Macauley about the plain feel of the object that was seized during the pat down.   And Cannon never argued that the object seized was not immediately seizable upon its plain feel.[22]

(16)   Because Cannon did not fairly raise this argument below, it is reviewed for plain error.   The issue of whether it was immediately apparent that the object seized was subject to seizure does not rise to the level of plain error: it was not a

---

[21] Appellant's Second Am. Opening Br. at 12.
[22] App. to Appellee's Answering Br. at B9-10 (arguing in conclusion that "there was no reasonable articulable suspicion to get him out of the car and continue the stop at that point"); *see also id.* at B11 (summarizing Cannon's suppression argument, "Cannon contends that Trooper Macauley unlawfully prolonged the traffic stop in absence of reasonable suspicion making the search of Mr. Cannon's person the unlawful result of an unlawful detention").

8

"material defect[] . . . apparent on the face of the record."[23]  Trooper Macauley testified that he first noticed the object seized when Cannon exited the vehicle; it was in the front of Cannon's waistband and was consistent in size and shape with a firearm.  This prompted Trooper Macauley to pat down Cannon, at which point he discovered that the object was a small brick of cocaine.  There is no plain error here.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

---

[23] *Wainwright*, 504 A.2d at 1100.