IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSEPH BAKER, JR., | § | |
| | § | No.   501, 2018 |
| Respondent Below, | § | |
| Appellant, | § | Court Below:   Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | I.D. No. 1711009663 (K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted:   May 8, 2019
Decided:   July 18, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

Upon appeal from the Family Court.   **REVERSED AND REMANDED**

Nicole M. Walker, Esquire, Assistant Public Defender, Wilmington, Delaware for Appellant, Joseph Baker, Jr.

John Williams, Esquire, Deputy Attorney General, Dover, Delaware for Appellee, State of Delaware.

**VAUGHN**, Justice:

This is an appeal from an order of the Family Court adjudging the appellant, Joseph Baker, Jr.,[1] a minor child, delinquent for having committed an act of Rape in the Second Degree. Initially, Baker was charged with three counts of Rape in the Second Degree. Count Two was voluntarily dismissed by the State before trial. At trial, the Family Court judge found Baker delinquent on Count One and acquitted him on Count Three. On appeal, Baker argues that the judgment of delinquency for the one count of Rape in the Second Degree should be reversed because of evidentiary errors made by the Family Court judge at trial. We agree that errors were made and reversal is required.

It is alleged that the two counts of Rape in the Second Degree that went to trial occurred in Kent County. The alleged victim in both counts is Baker's younger sister, S.B. She was six years of age at the time of the alleged offenses. Baker was thirteen years of age at the time of the alleged offenses. The acts of rape are alleged to have occurred in S.B.'s home when Baker was there for weekend visitations. They are alleged to have occurred in Baker's bedroom.

## II.

### A.

The first claim of error made by Baker relates to the testimony of Emily Brown, a friend of S.B.'s mother. Brown was the first witness called by the State.

---

[1] A pseudonym was assigned on appeal pursuant to Supreme Court Rule 7(d).

She testified that her two sons were playing with S.B. on a trampoline in her backyard. She testified that she overheard S.B. say, "Junior showed me his privates," and that one of her sons responded, "Who's Junior?"[2] S.B. explained that Junior was her brother. According to Brown, when her sons asked S.B. why her brother did that, S.B. "was like, 'He made me'—you know, 'He'—she said, 'I don't know. He showed me his privates and made me touch them . . . .'"[3]

Brown testified that she put an end to the conversation and called S.B.'s mother to report what S.B. had said. She also spoke to S.B. and said, "I heard what you said on the trampoline, about Junior."[4] "Yeah," responded S.B.[5] Brown then asked, "Where were your parents at, when he did this?"[6] S.B. said that her parents were sleeping at the time.

Baker's counsel made a timely objection to Brown's testimony on the ground that it contained inadmissible hearsay. The State argued that S.B.'s statements as related by Brown were not offered for the truth of the matter asserted, but instead were offered for information as to what S.B. eventually told her mother and to show that S.B. was not being coached. Baker's counsel responded that she had not made

[2] App. to Appellant's Opening Br. at A18.
[3] *Id.*
[4] *Id.* at A18-19.
[5] *Id.* at A19.
[6] *Id.*

3

any argument or assertion that S.B. was coached. The Family Court judge overruled the objection.

This Court reviews "a trial court's ruling admitting or excluding evidence for abuse of discretion."[7] Baker contends that Brown's testimony did not satisfy the requirements of Delaware Rule of Evidence 801(d)(1)(B), which provides that a statement is not hearsay if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is consistent with the declarant's testimony and is offered . . . to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying."[8] The State argues in response that the trial judge did not abuse his discretion in admitting Brown's testimony relating to S.B.'s statements because during the testimony of the first witness the trial judge had no idea what further evidence might reveal.

In this case, both sides waived opening argument, Brown was the first witness called by the State, and there was simply no evidentiary basis upon which the trial judge could have concluded that Brown's testimony relating to S.B.'s statements was offered to rebut an express or implied charge that S.B. had recently fabricated

---

[7] *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015).
[8] D.R.E. 801(d)(1)(B)(ii).

her accusations against Baker or that she acted from a recent improper influence or motive. Admission of S.B.'s hearsay statements overheard by Brown was error.

The State also argues that any error in admitting Brown's testimony was harmless because S.B.'s out-of-court statements could have been admitted under 11 *Del. C.* § 3507. Section 3507, however, applies "[i]n a criminal prosecution."[9] "[A] Family Court adjudication of delinquency is a civil proceeding."[10] Because the delinquency proceeding involved here was not a "criminal prosecution," § 3507 does not apply.

## B.

The second evidentiary issue Baker raises on appeal relates to the testimony of Kitty Nelson, a child-protective-services investigator for the Department of Social Services in Caroline County, Maryland. Nelson interviewed S.B in connection with the allegations. Nelson's testimony at trial focused on the use of anatomical dolls during her interview with S.B. She testified that through the use of the anatomical dolls, S.B. illustrated the alleged acts of rape Baker committed upon her. Baker's trial counsel made a timely objection that any statements made by S.B. during the interview, including, by implication, the nonverbal statements made through S.B.'s use of the anatomical dolls, were inadmissible hearsay. The State responded that

---

[9] 11 *Del. C.* § 3507(a).
[10] *G.D. v. State*, 389 A.2d 764, 765 (Del. 1978).

5

what Nelson saw S.B. demonstrate with the dolls was not hearsay. The objection was overruled.

Hearsay is "a statement that . . . the declarant does not make while testifying at the current trial or hearing" that is "offer[ed] in evidence to prove the truth of the matter asserted in the statement."[11] For hearsay purposes, "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."[12] Although this issue has not been directly addressed by this Court, it is generally accepted that a child's use of anatomical dolls to show someone what happened to the child—especially when used to respond to questions about what happened—is nonverbal conduct intended as an assertion and, therefore, a "statement" for purposes of the hearsay rule.[13] The child's use of anatomical dolls is effectively a substitute for orally asserting what happened.

---

[11] D.R.E. 801(c).

[12] *Id.* 801(a).

[13] *E.g.*, *People v. Bowers*, 801 P.2d 511, 523 (Colo. 1990) (en banc) ("K.B.'s use of anatomical dolls during the interviews by the detective and the counselor, as well as the child's gesturing during these interviews, constituted a form of nonverbal conduct that was intended by the child to be communicative. . . . . [T]he child's use of the dolls and gesturing were intended to be no less communicative than the child's verbal responses."); *State v. Townsend*, 635 So. 2d 949, 959 (Fla. 1994) ("When an expert testifies regarding how a child behaved with anatomically correct dolls, the expert is repeating the communications of the child witness."); *Stringer v. Commonwealth*, 956 S.W.2d 883, 886-87 (Ky. 1997) ("[W]e [have] held that a social worker could not describe to the jury the child victim's out-of-court manipulation of anatomically detailed dolls, because the manipulation of the dolls was a nonverbal communication, thus hearsay." (citing *Souder v. Commonwealth*, 719 S.W.2d 730 (Ky. 1986), *overruled on other grounds by B.B. v. Commonwealth*, 226 S.W.3d 47 (Ky. 2007))); *see also Ray v. State*, 587 A.2d 439, 440, 443-44 (Del. 1991) (finding reversible error in the admission of a child victim's out-of-court statements, which included using anatomically correct dolls to depict the assault, where the proper foundation under 11 *Del. C.* § 3507 was not provided); *cf. United States v. Caro*, 569 F.2d 411, 416 n.9 (5th

Because S.B.'s manipulation of the dolls was a statement for hearsay purposes, done outside of court, and offered for its truth, Nelson's testimony as to S.B.'s manipulation of the dolls was inadmissible hearsay absent an applicable exception to, or exclusion from, the rule against hearsay. Other than 11 *Del. C.* § 3507, which as explained is inapplicable here, the State has not offered a potential hearsay exception or exclusion. Therefore, Nelson's testimony as to S.B.'s manipulation of the dolls was inadmissible hearsay, and admission of this testimony was error.

In its ruling, the Family Court specifically discussed the consistency of S.B.'s testimony with the testimony of Brown and Nelson. Because we have found that the testimony of both Brown and Nelson contained inadmissible hearsay, it cannot be said that these evidentiary errors are harmless.

## C.

Next, Baker contends that the Family Court judge erred in admitting evidence that Baker had committed other, uncharged sexual abuse against S.B. in Maryland. Several witnesses made references to allegations of abuse in Maryland. This claim of error is reviewable only for plain error because no objection to the mention of the Maryland allegations was made at trial.[14]

---

Cir. 1978) (explaining that "pointing out" constitutes assertive conduct and is therefore hearsay); *United States v. Ross*, 321 F.2d 61, 69 (2d Cir. 1963) (same).

[14] *E.g.*, *Zhurbin v. State*, 104 A.3d 108, 113 (Del. 2014) ("To warrant review on appeal when the

It was not plain error for the Maryland police officer who testified at trial about his interview of Baker (who made admissions in that interview that undermined his general credibility) to explain that he interviewed Baker because of allegations made to the Caroline County Department of Social Services. This information was admissible for the limited purpose of informing the trial judge as to why a Maryland police officer was testifying in a Delaware trial regarding sexual abuse allegedly occurring in Delaware. Under Delaware Rule of Evidence 404, the officer's testimony regarding the details of the Maryland allegations was not admissible, and on remand this portion of his testimony shall not be considered, as evidence tending to make it more likely that Baker actually committed the Delaware allegations.[15] For this same reason, testimony from other witnesses regarding the details of the Maryland allegations was not admissible under Rule 404 and, therefore, shall not be considered on remand.

### D.

The final two claims of error are related and will be considered together. The first is that the trial judge erred by admitting evidence that Baker's stepfather may have sexually abused another one of Baker's sisters, M.B. The second is that the

---

issue has not been fairly presented [to the trial court], there must be 'plain error.'"); *see also* Supr. Ct. R. 8.

[15] *See* D.R.E. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

trial judge erred by permitting the State to present a "learned behavior" theory based on Baker's knowledge that his stepfather had allegedly abused M.B.

The State first presented the alleged sexual abuse of M.B. during the direct examination of the investigating officer. The State asked him whether S.B.'s mother was on the Child Abuse Registry. Baker's trial counsel objected on grounds of relevance. According to the State, the relevance was that she was on the Registry for not protecting her own child. "And here," the State explained, "the State feels strongly that she's doing the same exact thing, by hindering her son in the interview process."[16] The Family Court judge overruled the objection. The officer then testified that the incident that led to the mother being placed on the Child Abuse Registry involved sexual abuse of her daughter, M.B.

The State returned to the subject during the cross-examination of Baker. At that time, the State initially indicated to the trial judge that it wanted to ask Baker "if he's aware of the history of his Step-Dad, not his current Step-Dad, but his Step-Dad from [M.B.], because I do think that his Step-Dad potentially molested him."[17] Baker's trial counsel objected on the grounds of relevance, and the trial judge overruled the objection. After further discussion, the State indicated that it had only two questions it wished to ask—how long the prior stepfather, S.D., had been his

---

[16] App. to Appellant's Opening Br. at A52.
[17] *Id.* at A101.

stepfather and whether Baker was aware that S.D. had abused M.B. In support of these questions, the State argued that "[t]he relevance, again, it goes to was he abused, to see his motive, where, why? It's opportunity, [it's] a learned behavior, [it's] my whole argument."[18] Baker's trial counsel continued to object. The court allowed the State to ask its questions, and Baker replied that S.D. had been his stepfather for about ten years and he was aware that S.D. allegedly abused his sister, M.B.

> The State's summation included an argument based on "learned behavior":

> Your Honor, the State's position is that something terrible happened to [Baker]. That he had a Step-Dad that did heinous things to his sister. And we know that because it was litigated in Sussex County Court.

> But what we don't know is the extent of what else occurred in that house. Whether this was a learned behavior, by his Step-Dad, or if it was just motivated by hormones. It's the State's contention that it was learned behavior.[19]

Although this issue has not been directly addressed in the courts of this state, evidence of "learned behavior" or "battering parent syndrome"—the idea that a person who was abused as a child by a parent or parent figure is more likely to repeat this behavior—has been held inadmissible by many courts across the country.[20]

---

[18] *Id.* at A103.
[19] *Id.* at A108.
[20] *E.g.*, *State v. Pulizzano*, 456 N.W.2d 325, 336 (Wyo. 1990) (citing Thomas N. Bulleit Jr., Note, *The Battering Parent Syndrome: Inexpert Testimony as Character Evidence*, 17 U. Mich. J.L. Reform 653 (1984)).

These courts have reasoned that such evidence is clear propensity evidence, rendered inadmissible by Rule 404 (or analogous rule).[21]   Simply put, "to the extent that such evidence is relevant at all, it is character evidence that may not be admitted as proof of guilt."[22]   And when the State's case depends largely (if not exclusively) on the credibility of the alleged victim in comparison to the credibility of the defendant, courts have held that admission of this "learned behavior" evidence constitutes reversible error.[23]

Although the prosecutor expressed a suspicion that Baker himself had been a victim of abuse, the theory it presented was that Baker "learned" sexual abuse "behavior" from an awareness of an allegation that S.D. had sexually abused his sister, M.B.   We see no significant difference between a theory that a person's

---

[21] *E.g.*, *State v. Jahnke*, 353 N.W.2d 606, 610 (Minn. Ct. App. 1984) ("To ask a defendant accused of incest whether she was sexually abused as a child is highly prejudicial and cannot be condoned."); *Kirby v. State*, 208 S.W.3d 568, 573 (Tex. Ct. App. 2006) (holding that evidence of the defendant's sexual abuse as a child, whether viewed as a character trait under rule 404(a) or an act under rule 404(b), was inadmissible); *Pulizzano*, 456 N.W.2d at 336 ("The admissibility of evidence of the battering parent syndrome has been controversial among the courts.   If admissible at all, however, the courts have been uniform that it must be supported by expert testimony, both with respect to the theory itself and whether the defendant exhibits character traits consistent with that profile."   (citations omitted)); *see also Nelson v. State*, 782 P.2d 290, 297 (Alaska Ct. App. 1989) ("Particularly in light of the widespread belief that sexual abusers of children are frequently people who have themselves been victims of abuse as children, the evidence of Nelson's abuse as a child carried a strong and unmistakable potential for prejudice.").
[22] *Kirby*, 208 S.W.3d at 573 (citing Tex. R. Evid. 404).
[23] *E.g.*, *id.* at 574-575 (reversing a conviction for sexual abuse of a child where the success of the case depended on a credibility determination between the alleged child victim and the defendant because "[t]he testimony that [the defendant] had been the victim of sexual abuse, even when discounted by expert testimony, improperly called into play the commonly held belief that victims of sexual abuse are more likely to abuse others" and, therefore, likely influenced the jury's credibility determination); *see also Nelson*, 782 P.2d at 297.

alleged sexual abuse of another is learned behavior because the person was a victim of abuse or is learned behavior because another member of the family was the victim. In both contexts, it is propensity evidence. We agree with the aforementioned courts and hold that "learned behavior" evidence is inadmissible propensity evidence under Delaware Rule of Evidence 404. It was error for the Family Court judge to admit such evidence and to allow argument relating to it in closing.

For similar reasons, it was also error to admit evidence that the mother was on the Child Abuse Registry. First of all, it is unclear to us how this fact is relevant under Delaware Rule of Evidence 401. The evidence that the mother is on the Registry for an incident involving M.B. does not have "any tendency to make a fact" of consequence the State sought to prove—the mother's alleged hindering of her son in the interview process—"more or less probable than it would be without th[at] evidence."[24] Furthermore, even if this evidence is somehow relevant to that fact of consequence (or some other, unidentified fact of consequence), it is inadmissible character evidence under Rule 404.

### III.

For the foregoing reasons, the judgment of the Family Court finding the appellant delinquent for having committed an act of Rape in the Second Degree is

---

[24] D.R.E. 401.

reversed, and the case is remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.