IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAIQUAN BORDLEY, | § | |
| | § | No. 564, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1604019780 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 6, 2019
Decided: January 7, 2020

Before **SEITZ**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

# O R D E R

On this 7th day of January 2020, upon consideration of the parties' briefs, oral argument, and the record on appeal, it appears to the Court that:

(1) Officers arrested Daiquan Bordley and co-conspirators Chelsea Braunskill and Zhyree Harmon in connection with a robbery-turned-murder that occurred at the Port Mahon fishing pier on the Delaware Bay. A grand jury indicted Bordley on counts of Murder First Degree, Robbery First Degree, Possession of a Firearm During the Commission of a Felony, and Conspiracy Second Degree. Braunskill and Harmon entered into plea agreements and testified at Bordley's trial. Bordley's trial was by the Superior Court without a jury. The trial judge convicted Bordley on all counts. This appeal followed.

(2) Bordley makes three claims on appeal. First, he contends that his due process rights[1] were violated because of prosecutorial misconduct. Second, he contends that his due process rights were violated because the trial judge admitted into evidence text messages that were not properly authenticated. Finally, he contends that his due process rights were violated because the trial judge did not consider whether notes Harmon had written impeached his trial testimony. We find no merit to Bordley's claims and affirm the trial judge's findings of guilt.

(3) Bordley and Chelsea Braunskill devised a plan to lure Dontray Hendricks to the Port Mahon pier east of Little Creek for the purpose of robbing him. Braunskill and Hendricks knew each other through marijuana sales, with each having sold marijuana to the other. At some point, Harmon also joined the conspiracy. On the day of the murder, Braunskill contacted Hendricks and said she wanted to buy marijuana and smoke it with him that evening. They agreed that Hendricks would pick Braunskill up in his car. Braunskill invited her college roommate, Alexis Golden, to go along, and when evening came the three of them set out for the Port Mahon pier. As they drove to the pier, Braunskill texted Bordley to keep him informed of their activity. When they arrived at Port Mahon, Hendricks, Golden, and Braunskill walked out onto the pier and smoked marijuana. About 10 or 15 minutes later, Bordley, Harmon, and Harmon's brother-in-law, Christopher

---

[1] U.S. CONST. amends. 5, 14; Del. Const. art. I, § 7.

2

Gartner-Hunter, arrived at the pier in Bordley's vehicle. The three exited Bordley's vehicle and walked out on the pier. Bordley and Hendricks then engaged in what Golden called a tussle and Harmon described as wrestling. Bordley then shot and killed Hendricks. Braunskill's testimony was that Bordley "walked straight up to him and shot him."[2] Bordley, Harmon, and Gartner-Hunter then fled in Bordley's vehicle and Braunskill and Golden fled in Hendricks' vehicle.

(4) Bordley's first contention is that the prosecutor engaged in misconduct – specifically witness intimidation – depriving him of his due process rights. During the defense's case, Bordley's counsel called Christopher Gartner-Hunter as a subpoenaed witness. After Gartner-Hunter had taken the witness stand and been sworn, but before defense counsel asked a question, one of the prosecutors, in open court, informed the trial judge, "Your Honor, before we begin testimony with this witness, I believe it would be appropriate for the Court to do a colloquy with him. He is still a suspect in this case, and he has not been arrested at this time."[3] The trial judge asked, "And then you request a colloquy?"[4] The prosecutor replied:

> That's correct, Your Honor. The Court has heard testimony regarding Mr. Gartner-Hunter and his involvement. He has not been charged yet. It doesn't mean he will not be charged. I don't know if he's had any

---

[2] App. to Appellant's Opening Br. at A232:8 [hereinafter A_].
[3] *Id.* at A332:5-9.
[4] *Id.* at A333:6.

opportunity to meet with a defense attorney regarding whether or not he should testify.[5]

Bordley's attorney then responded:

> I think with a murder charge everyone could be a suspect. I believe Ms. Golden was a suspect at one point in time. I think the detective told us that. I would hate to see the State try to threaten this particular witness to silence him so he can't give information in Mr. Bordley's case. He had an attorney that represented him on several different charges that are out there pending.
>
> When we spoke with him, we are going to try to limit his testimony to just the ride back from the pier that evening in a very select topic. So we are not going to go outside that topic, and I believe that when he speaks to that topic it will not be incriminating on his part. But, you know, he's over the age of 18. He was involved in this.
>
> We are talking, Your Honor, also two-and-a-half years that the State comes forward now and says, "Well, he is still a suspect. We still might arrest him," just to quiet him on the stand. I think we have a lot of -- there was a similar incidence of intimidation, possible intimidation of another witness by the State. You know, Your Honor, we want the truth here. We want it to come out. It's going to be limited testimony.[6]

The trial judge then engaged in the following colloquy with Gartner-

Hunter:

> The Court: Sir, are you represented by counsel?
> The Witness: No, sir.
> The Court: Have you consulted with counsel concerning any matters which you may be called to testify today?

---

[5] *Id.* at A333:7-13.
[6] *Id.* at A333:17 to A334:18.

4

> The Witness: At one point in time I did.
>
> The Court: All right. Is that counsel still representing you at the present time?
>
> The Witness: No.
>
> The Court: All right. Do you understand, I hope what's just been said in court, that -- I am not sure -- I'm the finder of fact and law here in this case, but I don't know what your involvement would be. But if there is a risk you are involved and there is a possibility that based on your testimony that you could be charged. Do you understand that?
>
> The Witness: Yes, I do.
>
> The Court: And do you wish to consult with counsel now in that regard?
>
> The Witness: Considering the facts, yes.[7]

The trial judge then allowed Gartner-Hunter to leave the courtroom to consult with counsel:

> The Court: You may step down, but you are still under subpoena to appear to this court. If you wish to consult with counsel, you may do so today.
>
> The Witness: Okay.
>
> The Court: Very well. I will allow him to consult with counsel today. He may be recalled by the defense on Monday. That gives him an opportunity to consult with counsel.[8]

The record of Mr. Gartner-Hunter's involvement as a possible witness ends there.

He did not testify, and nowhere in the record is there any further discussion of his status as a witness.

---

[7] *Id.* at A335:19 to A336:15.
[8] *Id.* at A337:11-18.

(5) The parties disagree on the standard of review that we should apply to Bordley's claim of prosecutorial misconduct. Bordley argues he preserved the issue through the above exchange and that *de novo* review applies. The State disagrees, arguing that Bordley did not fairly present a claim of prosecutorial misconduct to the trial judge and that plain error review should apply.

(6) The lens through which we review a claim of prosecutorial misconduct depends on whether "defense counsel raised a timely and pertinent objection to prosecutorial misconduct at trial, or if the trial judge intervened and considered the issue *sua sponte*."[9] If defense counsel "raise[s] a timely and pertinent objection" (or the trial judge does so *sua sponte*), "we essentially review for 'harmless error.' If defense counsel failed to do so and the trial judge did not intervene *sua sponte*, we review only for plain error."[10] We think Bordley's counsel sufficiently raised his concern of witness intimidation and therefore examine the record *de novo* under a harmless error standard.

(7) We addressed a similar issue in *Torres v. State*.[11] In that case, the defendant was on trial for various drug offenses. Raul Morales was involved with Torres, and others, in drug activity. Before Torres's trial, Morales, who was also charged, took a plea agreement in which he was promised sentencing consideration

---

[9] *Baker v.* State, 906 A.2d 139, 148 (Del. 2006) (en banc).
[10] *Id.*
[11] *Torres v. State*, 979 A.2d 1087 (Del. 2009).

in exchange for providing substantial assistance in identifying his co-conspirators and testifying truthfully at their trials. On direct examination at Torres's trial, Morales gave testimony tending to inculpate Torres. On cross-examination, however, he gave some testimony which was favorable to Torres. On re-direct examination, the prosecutor forcefully reminded Morales of the risks he faced if he failed to testify truthfully. This court, applying a plain error standard of review, rejected Torres's claim that the prosecutor had engaged in prosecutorial misconduct. In doing so, we stated:

> [T]he government has an obligation to warn unrepresented witnesses of the risk that the testimony they are going to give can be used against them. "Where, however, the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary, and appropriate, the inference that the prosecutor sought to coerce a witness into silence is strong.[12]

In *Abbatiello v. State*, we added that in order to rise to the level of prosecutorial misconduct, the prosecutor's statement(s) "must amount to a substantial interference with a witness's free and unhampered determination to testify before a due process violation will be found."[13]

---

[12] *Id.* at 1095 (Del. 2009) (quoting *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995) (citation omitted)).

[13] 170 A.3d 779, 2017 WL 3725063, at *2 (Del. Aug. 29, 2017) (TABLE) (quoting *Torres*, 979 A.2d at 1095 (construing the *Pierce* test)).

(8) In *Abbatiello*, we discussed a claim of prosecutorial misconduct where it was alleged that the State interfered with defense alibi witnesses.[14] The crime involved there was robbery. One of the State's witnesses was a prison podmate of Abbatiello's who was prepared to testify for the State that Abbatiello had confessed the crime to him but intended to call alibi witnesses at his trial. The State disclosed the testimony he was prepared to give to the court and defense counsel at a sidebar and warned that "from [defense counsel's] point of view . . . it opens up his alibi witnesses to perjury charges, which he now has to address with them."[15] Defense counsel did discuss the prosecutor's warning with the alibi witnesses, and they did not testify. On appeal, the defendant argued that the State had committed prosecutorial misconduct by interfering with his witnesses. We found that the prosecutor's statements to the court "did not amount to 'substantial interference' nor d[id] they support an inference that they were intended 'to coerce [Abbatiello's witnesses] into silence.'"[16] We found no prosecutorial misconduct on those facts and noted that "the State's comment was a permissible warning," not a constitutional violation.[17]

---

[14] *Id.* at *1.
[15] *Id.* at *2.
[16] *Id.* (first alteration added)
[17] *Id.*

(9) The State's comments here were also a permissible warning. Apparently all that was known of Gartner-Hunter relevant to the murder was that he had ridden with Bordley to the scene of the crime and ridden away with him after the crime. The State explained to the trial judge that it had made several attempts to interview Gartner-Hunter, but he had not made any statements to the State. Defense counsel complained that Golden, who also testified, had not been given a similar warning, but the State explained that it had determined she was not a suspect. The State's comments complied with its obligation to warn an unrepresented witness of the risk that any testimony given could be used against him. The warning did not go over and above what was necessary or appropriate. Bordley complains that the State's comments were made when Gartner-Hunter was on the stand and could hear them, rather than at side-bar. However, the State's warning was meant to be communicated to Gartner-Hunter and there was nothing inappropriate about the warning being delivered in open court or in the trial judge's colloquy. Gartner-Hunter's subsequent disappearance from the case is not explained and is not evidence of prosecutorial misconduct. He was subject to a subpoena, and nothing in the record indicates whether the defense made a follow-up effort to recall Gartner-Hunter to the stand or if Gartner-Hunter consulted with a lawyer.[18] We have no means of determining why

---

[18] At Oral Argument, we asked Bordley's counsel whether we know if Gartner-Hunter ever spoke with a lawyer, if he was subpoenaed to testify originally, and, if so, whether the court was subsequently asked to enforce the subpoena following the colloquy, to which counsel answered,

9

Gartner-Hunter never took the stand to testify.[19]  Given the record of the case, we do not find that the prosecutor's warning "substantially interfere[d] with [the] witness's free and unhampered determination to testify."  There was no prosecutorial misconduct.

(10)  Bordley next contends that the Superior Court erred by admitting into evidence text messages between Braunskill and Bordley that were not properly authenticated.  This issue was not raised at trial.  We generally review for plain error arguments that have not been fairly presented to the trial court.[20]  "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[21] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[22]

---

in part, that it is unknown whether Gartner-Hunter spoke with a lawyer, and trial counsel "did not" ask to enforce the subpoena.  *See* Oral Argument Video at 6:38–7:02, https://livestream.com/accounts/5969852/events/8882476/videos/198668999.  During her rebuttal argument, Bordley's counsel clarified that Gartner-Hunter was originally subpoenaed to testify. *Id.* at 32:44–32:58.

[19] We asked counsel during Oral Argument, "What can we ascertain from the record as to why Mr. Gartner-Hunter did not testify? Is there anything that suggests that he communicated to anyone that he didn't want to testify or that if he was called to testify he would invoke the Fifth Amendment," to which counsel responded, "There is not, Your Honor."  *Id.* at 7:40–7:59.

[20] *Zhurbin v. State*, 104 A.3d 108, 113 (Del. 2014).

[21] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (en banc).

[22] *Id.*

(11)    The record indicates that during Braunskill's testimony, the State asked the trial judge whether it could "have a moment with defense counsel."[23]  The trial judge agreed and after the prosecutor had that moment, defense counsel said to the trial judge, "Your Honor, we have no opposition to a list of text messages between Ms. Chelsea Braunskill and someone else."[24]  The trial judge admitted them into evidence and they were marked as an exhibit.  The first question the prosecutor asked Braunskill was whether she could identify the text messages.  She responded: "It's text messages between the defendant and I."[25]  The prosecutor then proceeded to question Braunskill about the text messages in some detail with no objection from defense counsel.  On appeal, Bordley argues "It appears now that there was a misunderstanding.  It appears that Trial Counsel thought the text messages were with someone else."[26]  He argues that Bordley could not be identified as the author of a text message simply because it was sent from his cell phone.  He argues that there was testimony that Harmon used his phone.

(12)    Bordley concedes that the plain error standard of review applies, but the State urges us to apply a waiver standard and find that any claim related to the text messages was waived.  The State correctly argues that the plain error standard

---

[23] A244:1-2.
[24] *Id.* at A244:4-6.
[25] *Id.* at A246:5.
[26] Appellant's Opening Br. at 28.

is meant to apply to errors which affect substantial rights which are forfeited for failure to assert them at trial, not perceived errors which were waived.[27] "There is a conceptual difference between reviewing a forfeited error and an error that has been waived."[28] The State also argues that Braunskill's testimony authenticated the text messages. Since Bordley argues that the text messages were admitted through a "misunderstanding" on the part of his trial counsel, however, we will review for plain error.

(13) There was no hesitancy or equivocation in Braunskill's identification of the text messages. Applying the plain error standard, the trial judge had no reason to question the admissibility of the text messages in the absence of an objection. There is no plain error.

(14) Bordley's third and final argument is that the trial judge erred because in his bench ruling he did not mention four handwritten notes allegedly written by Harmon and given to Bordley while both were incarcerated. Bordley testified that the notes were given to him by Harmon. Harmon denied writing them. At the request of Bordley's trial counsel, the trial judge admitted the notes into evidence over the State's objection. Bordley argues that the notes had impeachment value against Harmon, who was one of the witnesses who identified him as the shooter,

---

[27] *See Bullock v. State*, 775 A.2d 1043, 1061 (Del. 2001) (en banc) (Walsh, J., and Berger, J., dissenting).
[28] *Id*.

and the trial judge's failure to mention them in his bench ruling was error. Both parties agree that this claim is also subject to plain error review.

(15)   The trial judge's verdicts of guilt were general findings delivered orally from the bench as permitted under Superior Court Criminal Rule 23(c). In rendering such verdicts, it is axiomatic that a trial judge is not required to comment upon every piece of evidence admitted. There was sufficient evidence to convict Bordley even if Harmon's testimony was completed disregarded. The fact that the trial judge did not specifically comment on the notes is not plain error.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice